[No. E023770. Fourth Dist., Div. Two. May 10, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT DION SPIRLIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV and VI.

**COUNSEL**

Tracy L. Emblem, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Nancy Palmieri and Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, J.—**

I

INTRODUCTION

Following the close of the prosecution's case-in-chief in a robbery trial, the defense rested without presenting any opening statement or evidence. Defendant made a *Marsden*[1] motion, which was denied after a hearing. Thereafter, the jury convicted defendant of committing felony robberies of a Shell gas station on August 24, 1996, and September 20, 1996, while personally armed (Pen. Code, §§ 211, 12022.5, subd. (a) and 1192.7, subd.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

(c)(8)[2]), and in doing so, falsely imprisoning his victims. (§ 236.) The jury further found defendant guilty of three counts of being a felon in possession of a handgun in violation of section 12021, subdivision (a)(1). In a bifurcated proceeding, the trial court found defendant guilty of the misdemeanor offense of possessing marijuana[3] (Health & Saf. Code, § 11357, subd. (b)) and found true that defendant had suffered four prison priors (§ 667.5, subd. (b)) and had two strike priors. Defendant was sentenced to 83 years to life in prison.

Defendant appeals, contending that the trial court erred in denying his *Marsden* motion, his counsel rendered ineffective assistance of counsel by not presenting any defense to rebut the prosecution's case, and that the court should have stayed two of the three counts of being a felon in possession of a handgun pursuant to section 654. As to the first two contentions, we find no error and affirm. However, we agree with the last contention and modify the sentence accordingly.

In a supplemental argument submitted after all briefing had been completed, defendant contends that his custody credits were improperly calculated. We have considered the issue for purposes of judicial economy because it involves undisputed facts, is readily capable of calculation and takes only a few minutes of appellate time. (*People v. Guillen* (1994) 25 Cal.App.4th 756, 764 [31 Cal.Rptr.2d 653].) Having done so, we reject the contention.

II

FACTS

On August 24, 1996, defendant robbed a Shell gas station while pointing a gun at Bobby Miller, the co-owner of the Shell station.

On September 20, 1996, defendant robbed the same Shell gas station, this time while pointing a gun at Farhad Gharabiklou, the other co-owner of the Shell station.

Additional facts will be set forth below as relevant to the issues discussed.

---

[2]All further statutory references will be to the Penal Code unless otherwise indicated.

[3]Defendant's assertion that the misdemeanor offense was later dismissed pursuant to the prosecutor's motion is not supported by the record.

## III

### DENIAL OF MARSDEN MOTION

#### A *The Marsden Hearing*

After defense counsel rested without making an opening statement or presenting any witnesses, defendant made a *Marsden* motion, stating he had numerous favorable witnesses prepared to testify on his behalf, namely his wife, mother, sister, brother, Trijhem Solomon and "Erin," but that counsel had dissuaded them all from testifying by discussing the possibility of perjury and the need for counsel. The court stated it did not understand what the conflict was because it was required "to give an attorney to anybody if there [was] a possibility anything they will say would be incriminating, that they could say something that would incriminate them. [¶] As I indicated this morning, your wife was in a position that she could have said things that subjected her, made her subject to being prosecuted for a crime; but we didn't get to that point because[] she elected not to testify and asserted a certain marital privilege."

Defendant repeated his complaint that when counsel talked to defendant's witnesses, counsel told them that they would need an attorney in the event they perjured themselves. In response to the court's comment that defendant appeared to be implying that defense counsel had "scared the witnesses off," counsel stated he believed the court should grant the *Marsden* motion. As to defendant's wife, Maurisha Thomas, counsel explained: "I never spoke to her about testifying, except for the one time before, right before the trial was to start I asked her if she was going to testify. She said, 'I am not going to testify for the D.A.' I said, 'Will you testify for me?' When I asked her that same question today, she said, 'I am asserting the privilege.' [¶] Now, I am assuming what my client is saying is true. If what he is saying is true, then maybe she, somehow, misunderstood, when I said the Court would get her an attorney, she misunderstood that somehow I was trying to dissuade her from testifying." However, the court indicated that it would have had to appoint one itself because "from the information [it] had, there was a chance she was going to incriminate herself."

Regarding defendant's brother, Derrick, who worked at the Shell gas station, counsel explained, "as much as I am sure it pains my client to hear this, his brother did not want to come in and perjure himself, that is the impression I got from the phone call." The court inquired, "So, he was going

to testify about something that would explain the fingerprints, I take it. When you talked to him, he told you he didn't want to come in and commit perjury." Defense counsel confirmed: "Those aren't the exact words, but that is the gist." Counsel denied advising Derrick he would need an attorney even though counsel had recently learned that Derrick had given the Riverside County District Attorney investigator a statement that contradicted his anticipated trial testimony. As the court noted, Derrick would have been "impeachable with that."

The only other witness expected to give substantive testimony was Trijhem Solomon.[4] Solomon had told counsel that the gun belonged to him and had asked if the court would appoint him an attorney. Counsel had responded by discussing possible prosecution for perjury if Solomon was untruthful. When counsel last spoke with him the Friday before, Solomon had agreed to testify. However, Solomon did not show up for trial and counsel had no way of reaching him other than through defendant's family, as Solomon had refused to give counsel his address and had given counsel a disconnected phone number.

After listening to and discussing defendant's reasons, the trial court denied defendant's *Marsden* motion. Although defendant contends this was error, we find to the contrary.

### B *Analysis*

■ "Under the Sixth Amendment right to assistance of counsel ' " ' [a] defendant is entitled to [substitute another appointed attorney] if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " ' [Citation.]" (*People v. Welch* (1999) 20 Cal.4th 701, 728 [85 Cal.Rptr.2d 203, 976 P.2d 754].) " 'When a defendant moves for substitution of appointed counsel, the court must consider any specific examples of counsel's inadequate representation that the defendant wishes to enumerate. Thereafter, substitution is a matter of judicial discretion. Denial of the

---

[4]Defendant does not make any claim on appeal regarding the other three witnesses—his sister, his mother, and "Erin." This was a sound decision as the record shows that their failure to testify was not related to any conversation between them and counsel, but because: (1) defendant's sister's testimony was unnecessary since it related exclusively to dismissed robbery charges and evidence already ruled inadmissible by the court; (2) defendant's mother did not show up for trial although she had agreed to testify; and (3) Erin, who had apparently worked at the victimized Shell station at one time, could not be located.

motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel. [Citations.]' [Citation.]" (*People v. Smith* (1993) 6 Cal.4th 684, 690-691 [25 Cal.Rptr.2d 122, 863 P.2d 192].) ▪ Here, the court allowed defendant ample opportunity to present his claims and defendant does not contend otherwise. Having been given that opportunity, however, defendant did not make the necessary showing to entitle him to relief.

According to defendant, defense counsel was inadequate because he may have dissuaded favorable witnesses from testifying on defendant's behalf. In order to establish a violation of defendant's constitutional rights to compel the attendance of witnesses, as guaranteed by the Sixth Amendment, and to due process, as guaranteed by the Fourteenth Amendment, defendant must establish three elements: (1) " 'misconduct, i.e., conduct that was "entirely unnecessary to the proper performance of [counsel's] duties and was of such a nature as to transform a defense witness willing to testify into one unwilling to testify[]" ' "; (2) counsel's "misconduct was a substantial cause in depriving the defendant of the witness's testimony"; and (3) "the testimony [defendant] was unable to present was material to his defense."[5] (*People v. Lucas* (1995) 12 Cal.4th 415, 457 [48 Cal.Rptr.2d 525, 907 P.2d 373].)

In our opinion, defendant cannot carry the first part of his burden, that is, show that counsel acted improperly by discussing the issue of perjury and the possible need for an attorney with defendant's wife and with Solomon.[6] To begin with, counsel has no duty to call witnesses who will testify untruthfully (*In re Branch* (1969) 70 Cal.2d 200, 210 [74 Cal.Rptr. 238, 449 P.2d 174]) and in fact "has an ethical obligation not to present perjured

---

[5]These elements are required to be established by a defendant in order to prevail on a claim that the *prosecution* has interfered with a defendant's right to present witnesses. (See *People v. Lucas, supra*, 12 Cal.4th 415, 456 and cases cited therein; *In re Martin* (1987) 44 Cal.3d 1, 31 [241 Cal.Rptr. 263, 744 P.2d 374].) Defendant has not cited, nor have we found, any cases setting forth what elements are required to be shown when a defendant is claiming that defendant's own counsel interfered with said right. Absent any contrary authority, we will assume without deciding that the same elements must be established regardless of who defendant accuses of violating his right to present witnesses.

[6]There is no evidence in the record that counsel had such a discussion with defendant's brother, Derrick. In fact, counsel specifically denied advising Derrick he would need an attorney even though counsel knew that Derrick would be impeachable, and perhaps, be committing perjury, if he testified as intended because Derrick had given the prosecutor's investigator a conflicting statement. To this extent, Derrick apparently knew he was impeachable as he indicated his concern about perjuring himself to counsel on the phone. Accordingly, because there is no evidence defense counsel dissuaded Derrick from testifying, we limit our discussion on this issue to defendant's wife and Solomon.

testimony [citations] . . . . [Citations.]" (*People v. Jennings* (1999) 70 Cal.App.4th 899, 907 [83 Cal.Rptr.2d 33].) Thus, even if as defendant claims, his wife and Solomon decided not to testify because of counsel's statements regarding perjury and the possible need for an attorney, counsel's actions cannot be deemed misconduct since defendant did not have the right to present perjured testimony in the first place. Rather, counsel's manner of presenting the issues allowed the witnesses to decide themselves whether or not to testify. In this way, counsel was able to avoid violating his ethical duties yet still retain the ability to call the witnesses to the stand if they chose to testify (assuming of course the witnesses did not inform counsel affirmatively that they were going to lie).

Additionally, as noted by respondent, counsel's statements were not legally incorrect and defendant does not argue that they were. Rather, defendant appeared to be complaining that his attorney should not have been the one making them. However, defendant also claims he would have been inadequately represented if defense counsel intentionally overlooked issues likely to arise if defendant's witnesses testified. Moreover, such conduct would not have served [defendant's] cause any better since, as observed by the court, it would have been required to give an attorney to anybody if there was a possibility anything they will say would be incriminating, that they could say something that would incriminate them. (See *People v. Lucas, supra*, 12 Cal.4th 415, 458 [trial court was concerned defense witness might incriminate himself by discussing his drug use with defendant since "[a]ny evidence of illegal drug use, of course, could subject such a witness to parole or probation violations"].) For the above reasons, we conclude that counsel did not engage in conduct " 'wholly unnecessary to the proper performance of [his] duties and of such a character as "to transform [the witness] from a willing witness into one who would refuse to testify." ' [Citation.]" (*Ibid.*)

Given our conclusion, we will not afford deference, as defendant requests, to counsel's statement below that he believed the *Marsden* motion should be granted because defendant's wife may have misunderstood counsel when he said the court would get her an attorney. The fact that defendant's wife may have misunderstood what counsel was trying to say shows neither that counsel was providing inadequate representation to defendant or that counsel and defendant had " ' " ' . . . become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " ' " (*People v. Welch, supra*, 20 Cal.4th 701, 728.) For this same reason, we also reject defendant's related claim that the trial court abused its discretion by failing to "order [defendant's] wife to return to court to clarify whether she fully understood the marital privilege and the fact that she would be waiving her right to testify in defense of her husband." Instead, we agree with respondent

that the trial court correctly disregarded counsel's statement inasmuch as the court would have had an independent duty to appoint an attorney for defendant's wife in the event she testified because it had information she might incriminate herself. At any rate, the issue is waived as defendant did not request the trial court to order his wife to return during the *Marsden* hearing and thus the trial court had no opportunity to correct the purported error. Since the trial court was not asked to exercise its discretion in this manner, it could not have abused its discretion as defendant claims.

Defendant maintains that this case is analogous to *People v. Fernandez* (1990) 219 Cal.App.3d 1379 [269 Cal.Rptr. 116]. That case dealt with a codefendant's constitutional privilege against self-incrimination and defendant's constitutional right to present witnesses in his defense. The codefendant resolved the conflict when he chose to waive his privilege. Therefore, because the codefedant was the holder of the privilege and was entitled to knowingly and voluntarily waive it and testify on defendant's behalf, the Court of Appeal held that the trial court had erred in precluding defendant from calling his codefendant as a witness. (*Id.* at p. 1388.) Disregarding the fact that none of defendant's intended witnesses in this case were his codefendants, defendant is correct that *Fernandez* is similar in that, if his wife and/or Solomon had been willing to testify, they would have been able to do so. The problem is they were not willing to do so. His wife invoked the marital privilege. Solomon never showed up.

Contrary to defendant's assertion, the trial court gave defendant a full and complete *Marsden* hearing, allowing defendant to fully explain his reasons for wanting new counsel and making inquiries of its own of defendant and counsel. We conclude the trial court did not abuse its discretion in denying defendant's *Marsden* motion.

## IV

### INEFFECTIVE ASSISTANCE OF COUNSEL*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### SECTION 654

Defendant was convicted of three counts (counts III, VI & VII) of being a felon in possession of a handgun in violation of section 12021, subdivision

---

*See footnote, *ante*, page 119.

(a)(1) on three separate occasions, August 24, 1996 (the date of the first robbery), September 20, 1996 (the date of the second robbery), and September 26, 1996 (the date defendant was arrested and the gun discovered). The trial court sentenced defendant to a term of 25 years to life on count III, to run consecutively to his sentence on count I (robbery); and terms of 25 years to life on counts VI and VII, to run concurrently with his sentences on counts I (robbery), III (felon in possession of handgun), and IV (robbery).[7]

█ In his opening brief, defendant appeared to argue that the court violated section 654 by imposing separate punishments on two of his convictions for felon in possession (counts III and VI) and his two convictions for robbery (counts I and IV) on the ground that each possession was incidental to each robbery. Respondent addressed this contention by showing that defendant had different criminal intents in committing the robberies and the felon in possession offenses and therefore could be sentenced separately under our opinion in *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1413-1414 [273 Cal.Rptr. 253] (defendant was properly sentenced on two counts of robbery with use of a firearm and one count of being an ex-felon in possession of a handgun). Apparently recognizing this, defendant, in his reply brief, asserts that he does not challenge "the fact the court could impose a separate term for [his] conviction of violating . . . section 12021, subdivision (a)(1)" in addition to his sentences for robberies while personally armed. █ ■ ■ Instead, defendant contends he could only be sentenced on one of the three felon in possession of a handgun counts and the other two counts should be stayed pursuant to section 654.[8]

█ Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." "Section 654 precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" (*People v. Evers* (1992) 10 Cal.App.4th 588, 602 [12 Cal.Rptr.2d 637].) "Although there is a plethora of authority

---

[7]Defendant incorrectly states in his reply brief that the court sentenced him to *consecutive* terms for possession of the firearm in both counts III and VI.

[8]We need not decide whether this issue was improperly raised in defendant's reply brief as "[e]rrors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal. [Citations.]" (*People v. Perez* (1979) 23 Cal.3d 545, 550, fn. 3 [153 Cal.Rptr. 40, 591 P.2d 63].)

interpreting section 654" (*id.* at p. 602), the parties have not identified, nor have we found, any case dealing with the precise issue before us—whether a defendant can be thrice punished for being a felon in possession of the same handgun on three different occasions.

 The key inquiry here is whether defendant's objective and intent in possessing the handgun on all three occasions were the same, thus making the crime one indivisible transaction subject only to one punishment under section 654. (*People v. Brown* (1991) 234 Cal.App.3d 918, 933 [285 Cal.Rptr. 824].) Section 12021 does not require any specific criminal intent; general intent to commit the proscribed act is sufficient. (*People v. Jeffers* (1996) 41 Cal.App.4th 917, 922 [49 Cal.Rptr.2d 86].) The act proscribed by section 12021 is possession of a firearm by a convicted felon. (*Jeffers, supra,* 41 Cal.App.4th at p. 922.) Possession may be either actual or constructive as long it is intentional. (*Ibid.*) "The proof need not conform to the .exact date laid in the information, it being sufficient to prove the commission of the offense at any time prior to the filing of the information within the statutory period—the commission of the act here charged is not the kind that does not constitute a crime unless committed on a specific date; time is not of the essence or a material ingredient of the offense . . . ." (*People v. Neese* (1969) 272 Cal.App.2d 235, 245 [77 Cal.Rptr. 314].)

 Defendant argues that there was no evidence he "did not maintain *constructive possession* of the gun the entire time" from August 20 to September 26, and therefore the court improperly sentenced him. We agree. Defendant completed the offense once his intent to possess was perfected by possession. (*People v. Ratcliff, supra,* 223 Cal.App.3d 1401, 1414.) The following prosecution evidence shows defendant possessed the subject handgun for "a couple months" before he committed the present robberies. After defendant was arrested on September 26, 1996,[9] a police detective went to defendant's apartment. Defendant's wife, Maurisha Thomas, answered the door and indicated that defendant lived there "most of the time." In response to the detective's questions and concerns, Thomas directed the detective to a closet, where he found a gun and a loaded gun clip. Thomas advised the detective that the gun belonged to defendant and that he had possessed it for "a couple months or so." It is undisputed that the gun found in defendant's apartment was the same gun used during the robberies on August 24, 1996, and September 20, 1996.

In our opinion, the foregoing evidence is sufficient from which to infer that defendant had continuous constructive possession of the gun from a couple of months before the robberies to when the gun was found in

---

[9]The record mistakenly refers to the date as September 26, 1998.

defendant's apartment. While what defendant did later with the weapon, i.e., commit the robberies, were "separate and distinct transaction[s] undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon" (*People v. Ratcliff, supra,* 223 Cal.App.3d 1401, 1414), the same cannot be said of his continuous possession of the weapon. In other words, defendant's intent to possess the weapon as a felon did not change each time he committed a robbery or when he was arrested and the gun confiscated.

We conclude defendant's possession of the handgun was a single act with a single objective. Accordingly, the trial court should have stayed the imposition of sentence on counts VI and VII, rather than run them concurrently. "Where multiple punishment has been improperly imposed, '. . . the proper procedure is for the reviewing court to modify the sentence to stay imposition of the lesser term. [Citation.]' [Citation.]" (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1248 [51 Cal.Rptr.2d 150].)

## VI

### PRESENTENCE CREDITS*

. . . . . . . . . . . . . . . . . . . . . . . . .

## VII

### DISPOSITION

Defendant's sentence is modified so that execution of the sentence imposed for counts VI and VII is stayed pending the finality of the judgment and service of the sentences on the remaining counts, the stay to become permanent upon completion of the terms imposed. In all other respects, the judgment is affirmed.

Ramirez P. J., and Ward J., concurred.

A petition for a rehearing was denied June 7, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 23, 2000.

---

*See footnote, *ante,* page 119.