Filed 4/22/13  P. v. Alston CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055052 |
| v. | (Super.Ct.No. FWV1100368) |
| DENNIS JOHN ALSTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed with directions.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

This case arises from defendant Dennis John Alston ordering items over the Internet and paying for them with forged money orders. Defendant appeals from judgment entered following jury convictions for forgery (Pen. Code, § 470, subd. (d);[1] counts 1-4) and possession or display of a driver's license or identification card with intent to commit forgery (§ 470b; counts 6-8). The jury also found true one prison prior (§ 667.5, subd. (b)) and one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). The jury found defendant not guilty of count 5 for forgery. The trial court sentenced defendant to six years on count 1, and to consecutive terms of one year four months for each of the other counts, for a total prison term of 15 years.

Defendant contends his convictions for counts 6 through 8 must be reversed because there was insufficient evidence that he intended to commit forgery. As to counts 6 and 7, defendant argues sentencing should be stayed because the crimes were not incidental to the offenses alleged in counts 1 through 4, and were not committed with a single intent and objective. Defendant also argues there was insufficient evidence to support the prior strike allegation and his presentence good conduct credits must be recalculated under the recently amended version of section 4019. Defendant also requests this court to order the trial court to correct the abstract of judgment to reflect accurately only one prison prior.

_____

[1] Unless otherwise noted, all statutory references are to the Penal Code.

We conclude there was no error, other than that the sentencing minute order and abstract of judgment incorrectly state defendant had more than one prison prior. We therefore affirm the judgment, but instruct the trial court to correct the November 8, 2011, minute order and abstract of judgment to reflect that defendant had only one prison prior.

II

FACTS

**Counts 1 and 6**

On February 27, 2010, defendant rented a mailbox at Postal Annex, located at 7426 Cherry Avenue in Fontana. In order to rent the mailbox, defendant filled out two applications using the fictitious name of Daryl Wilson, and presented a California identification (ID) card and a Department of Veteran Affairs Medical Center employee ID card (VA ID card) (count 6). Both forms of identification were in the name of Daryl Wilson, with defendant's photograph on the ID cards.

In March 2010, Brandywine Jewelry Supply (Brandywine) received an $841.50 mail order from Daryl Wilson, for silver wire, silver beads, and silver charms. A Western Union money order (No. 14-037480295) accompanied the order (count 1). The $900 money order was signed in the name of Daryl Wilson. Wilson requested overnight delivery of the silver to 7426 Cherry Avenue, in Fontana, California. Because the money order was counterfeit, the money order was returned to the bank unpaid. A $9 Western Union money order, bearing the same number (No. 14-037480295) as the $900 money order, was issued in February 2010. Lisa Allen, the owner of Brandywine, reported the

3

incident to the Fontana Police Department. A detective retrieved the package from Postal Annex before defendant picked it up, and returned the package to Brandywine.

In September 2010, Brandywine received a mail order for sterling wire from Finest Degree Jewelry in Ontario California. The order included a $500 Chase Bank (Chase) money order (No. 1983491332), signed by Dwayne Wilson. Because the handwriting on the money order was similar to the writing on defendant's money order rejected in March 2010, Allen did not deposit the money order or ship the requested product. Chase informed her that the money order had already been cashed. Allen notified the police of the incident.

**Counts 2, 3, 4, and 7**

On June 4, 2010, defendant again used the fictitious name of Daryl Wilson, doing business as Finest Design, to rent a mailbox at Mail Plus and More, located at 1000 West Fourth Street in Ontario. Defendant filled out an application and mailbox rental agreement in the name of Daryl Wilson, and presented the same two forms of identification used for the Postal Annex mailbox rental (count 7).

In September 2010, Unique Wire Weaving received a mail order from Dwayne Wilson of Design Finest Jewelers, for silver mesh wire. A $850 Chase money order (No. 1983491332), signed by Dwayne Wilson, accompanied the order (count 2). Wilson requested overnight delivery to 1000 West Fourth Street, Ontario, California. A week or two after Unique Wire Weaving shipped the order, Unique Wire Weaving learned the money order was counterfeit. The company manager, Howard Gabriel, notified

4

defendant by email that the money order had been rejected by the bank, but received no response from defendant.

In October 2010, Streakwave Wireless received a mail order from Dwayne Wilson for telephone equipment, along with a $700 Chase money order (No. 1983491334) (count 3). Wilson requested overnight delivery to 1000 West Fourth Street, Ontario, California. About a week after the order was shipped to defendant, Streakwave Wireless learned that the money order was counterfeit.

Also in October 2010, Paul H. Gesswein and Company (Gesswein) received a mail order from Dwayne Wilson of Finest Degree Jewelers for fourteen 18-carat gold lobster claw clasps, along with a $700 Chase money order (No. 1983491334) from Dwayne Wilson (count 4). Wilson requested overnight delivery to 1000 West Fourth Street, Ontario, California. Within a few days of shipping the order to defendant, Gesswein discovered the money order was counterfeit. On April 26, 2010, and October 26, 2010, defendant sold gold scrap to Grand Jewelers. The owners of Grand Jewelers recalled that the items purchased from defendant in October probably included 18-carat gold lobster claw clasps. Defendant provided a California driver's license (CDL) bearing his actual name and an address on Adams Street in San Bernardino, but also provided his current address in Ontario at the Motel 6.

**Counts 5 and 8**

On December 27, 2010, defendant rented a mailbox at Fast Mailbox Plus, located at 10330 Central Avenue in Montclair. Defendant filled out a mailbox rental application and signed a mailbox service agreement using the fictitious name of Jerry Green, doing

5

business as Calvin Johnson. Defendant verified his identity as Jerry Green, with two forms of identification, a CDL and a VA ID card (count 8). The CDL and VA ID card were in the name of Jerry Green but showed defendant's photo.

In December 2010, Pookies Antique Treasures (Pookies) received a mail order for a silver pitcher, along with a $800 Chase money order (No. 1983491333) from Cal Johnson (count 5). Johnson requested the pitcher be shipped by overnight delivery to defendant's mailbox at his Fast Mailbox Plus address. After shipping the order, Pookies learned the money order was counterfeit.

**Investigation**

On June 9, 2010, Ontario Police Department Corporal Michael Nevin contacted defendant at Motel 6 in Ontario, regarding an unrelated fraud investigation. Defendant had been living at the Motel 6 under his own name since April 8, 2010. During a search of defendant's room, Nevin found the following items:

1. A California ID card and VA ID card in the name of Daryl Wilson, with defendant's photograph on the cards;

2. Pieces of paper with Veterans Affairs Medical Center information used to create the VA ID card;

3. A Chase money order, dated April 9, 2010, for $100;

4. Versions of the same money order with different dollar amounts, money order numbers, and dates;

5. Money orders that were cut and pasted together or had Wite-Out on them;

6. Versacheck paper used for checks;

6

7. A list of products used to wash checks;

8. Pieces of paper indicating defendant had practiced making counterfeit Chase money orders;

9. Pieces of paper regarding a Design Finest Yahoo email account;

10. Printouts and orders from website companies selling crafts, jewelry and precious metals.

Defendant told Nevin that he was unemployed and had made the money orders found in his motel room. Nevin later learned that the identification number on the California ID card found in defendant's room, belonged to Elena Medovaya, not to defendant or his alias, Daryl Wilson. Defendant's actual driver's license also showed a different name, number and address than the name and address on the California ID card found in his room with defendant's photograph on it.

On December 28, 2010, Ontario Police Department Officer Alicia Cabrera contacted defendant in the lobby of the same Motel 6 where defendant had previously been residing. Defendant had returned to the motel after moving out in June 2010, and had been living there under his own name since September 7, 2010. Cabrera encountered defendant sitting at a computer in the motel lobby, looking at an antique metals website. Cabrera found, on a desk next to defendant, a piece of paper listing his address at Fast Mailbox Plus as "your new address." Cabrera also found on the desk printouts confirming the Pookies order and orders he had placed with other vendors. Cabrera found in defendant's motel room the following items:

1. Tools used to make counterfeit money orders and ID cards;

2.    Papers and notes for making ID cards for Calvin Johnson and Jerry Green;

3.    Printouts for mail-orders;

4.    A printout on lobster claw clasps;

5.    Keys for defendant's Fast Mailbox Plus mail box and for entering the Fast Mailbox Plus store;

6.    A piece of paper with eight social security numbers on it.

III

SUFFICIENCY OF EVIDENCE OF INTENT TO COMMIT FORGERY

Defendant contends there was insufficient evidence that defendant possessed false VA ID cards and California ID cards, with intent to commit forgery in violation of section 470b.

We apply the substantial evidence standard of review when considering whether there was sufficient evidence to support defendant's convictions.  In doing so, this court must "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, citing *People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see also *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363.)

8

A conviction for violating section 470b requires evidence of intent to commit forgery. Section 470b provides: "Every person who displays or causes or permits to be displayed or has in his or her possession any driver's license or identification card of the type enumerated in Section 470a with the intent that the driver's license or identification card be used to facilitate the commission of any forgery, is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170." Section 470a includes "any driver's license or identification card issued by a governmental agency," such as a California ID card or VA ID card.

The offense of forgery (§ 470, subd. (a)) has three elements, namely, "a writing or other subject of forgery, the false making of the writing, and [an] intent to defraud." (*People v. Gaul-Alexander* (1995) 32 Cal.App.4th 735, 741.) "An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over that person or to induce that person to part with property or alter that person's position by some false statement or false representation of fact, wrongful concealment or suppression of the truth or by any artifice or act designed to deceive." (*People v. Pugh* (2002) 104 Cal.App.4th 66, 72.)

In the instant case, defendant was convicted of counts 6 through 8 for possessing false ID cards with intent to commit forgery in violation of section 470b. Defendant was charged with committing count 6 on February 27, 2010, by presenting a California ID card and VA ID card for the purpose of renting a mailbox at Postal Annex, using the alias, Daryl Wilson. Defendant allegedly committed count 7 on June 4, 2010, by using a California ID card and VA ID card to facilitate renting a mailbox at Mail Plus and More,

9

using the alias, Daryl Wilson. Defendant was charged with committing count 8 on December 27, 2010, by presenting a California ID card and VA ID card for the purpose of renting a mailbox at Fast Mailbox Plus, using the alias, Jerry Green, doing business as Calvin Johnson. In each instance, defendant rented mailboxes using ID cards with his photograph but with aliases. Defendant used the mailboxes to facilitate theft from various companies by placing orders of merchandise, with the merchandise delivered to defendant's rented mailboxes. The trier of fact could reasonably find that defendant rented the mailboxes with fake ID cards so as to avoid being identified as the perpetrator of defendant's acts of mail order fraud.

Defendant argues there is insufficient evidence that defendant intended to use the false ID cards to facilitate paying for the mail orders with counterfeit money orders. Defendant notes that the fake ID cards were allegedly presented on the dates he filled out and signed the three mailbox rental applications and agreements. Defendant argues that there is no evidence that at that time, he intended to use the fake ID cards to facilitate creating counterfeit money orders sent to the mail order businesses. He acknowledges that the fake ID cards were used to rent mailboxes intended to be used to facilitate the theft of merchandise from Internet mail order businesses but asserts this was not sufficient for a finding of violating section 470b. He claims there was no evidence that renting the mailboxes under the false names facilitated the mail order thefts. In addition, defendant argues section 470b is not violated by possessing or displaying a fake ID card with intent to facilitate theft. There must be intent to use the fake ID card to facilitate

10

forgery, rather than merely theft. The ID cards were not used to cash forged checks or for use during a purchase with a stolen credit card.

We conclude there was more than sufficient evidence defendant had the intent to use fake ID cards to facilitate the commission of a forgery. The prosecutor argued with regard to intent to commit a forgery, that defendant's "plan is open these PO Boxes under a fake name so that he can later commit forgery, counterfeiting money orders, and having the merchandise sent to that PO Box and making it difficult to track him down as a perpetrator because he's opening it up under a fake name." It is undisputed defendant used falsified ID cards to rent mailboxes. There was also substantial evidence defendant presented the fake ID cards with intent to defraud the mail order company owners, whom defendant paid with counterfeit money orders and told to deliver merchandise to the rented mailboxes. Defendant intended to deceive the mail order business owners and mailbox companies as to his actual identity in the event the business owners attempted to locate him and hold him accountable for the thefts.

Defendant argues there nevertheless was insufficient evidence of violating section 470b (counts 6, 7, and 8) because there was no evidence that, when defendant presented the fake ID cards to the mailbox rental companies, he intended to commit a forgery. Defendant claims the evidence only shows that he intended to rent mailboxes under fictitious names. But the jury could reasonably find that, when he rented the mailboxes, he intended to do this as part of his scheme to use forged money orders to purchase mail order merchandise, which would be delivered to defendant's rented mailboxes. Using the fictitious mailbox names, verified by the fake ID cards, further facilitated the forgery

11

scheme because the mail order vendors were more likely to view defendant's mail orders as legitimate if the name on the counterfeit money orders matched the name used for the mailbox rentals. There was thus substantial evidence showing that defendant's use of the fake ID cards was intended to facilitate a scheme of committing forgery and theft of mail order merchandise, without defendant being detected as the perpetrator of the forgery offenses.

IV

STAYING SENTENCES ON COUNTS 6 AND 7

Defendant contends that, if this court concludes there was sufficient evidence establishing that he possessed false ID cards with intent to use them to facilitate the forgeries alleged in counts 1 through 4, then defendant's sentences on counts 6 and 7 should be stayed under section 654.

Whether multiple convictions should be stayed pursuant to section 654 is primarily a factual question which will not be disturbed on appeal if supported by substantial evidence. (*People v. Martin* (2005) 133 Cal.App.4th 776, 781.) "[W]e consider the evidence in the light most favorable to respondent and presume the existence of every fact the trier could reasonably deduce from the evidence." (*Ibid.*) Section 654, subdivision (a), states as follows: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The purpose of section 654 is to ensure

12

punishment is commensurate with culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.)

Section 654 "applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid.*) Thus, when a course of conduct is at issue, the focus of inquiry is whether the defendant entertained single or multiple criminal objectives. (*People v. Macias* (1982) 137 Cal.App.3d 465, 470.)

In considering whether to apply section 654, the court in *People v. Curtin* (1994) 22 Cal.App.4th 528, 532, found it was appropriate to stay under section 654 the defendant's conviction for forgery of a check, because forgery and burglary were "part of the same indivisible transaction" and were "committed for a single criminal objective, to cash the check." (*Ibid.*) The facts of this case, however, are distinguishable from those in *Curtin*. Here, defendant planned and carried out a relatively sophisticated scheme in which he rented mailboxes using fabricated falsified ID cards with aliases in February

13

2010 (count 6) and June 2010 (count 7). Later, in March 2010, September 2010, and October 2010, defendant used forged money orders to purchase merchandise from various online vendors, with the merchandise delivered to defendant's rented mailboxes. Defendant's use of the false ID's (counts 6 and 7) occurred separate from the later acts of forgery (counts 1 through 4), in which defendant purchased mail order merchandise using forged money orders. The trial court could have reasonably found that defendant's use of the false ID's to rent mailboxes was not "part of the same indivisible transaction" as the subsequent mail order thefts, or necessarily "committed for a single criminal objective."

Even though it is apparent defendant's overall objective was to obtain mail-order merchandise paid for with forged money orders, he had separate objectives when he used false ID cards to rent mailboxes on different dates and at different locations. "It seems clear that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) Accordingly, we conclude it was appropriate for the trial court to impose separate sentences for each of the forgery convictions (counts 1-4), as well as separate sentences for counts 6 and 7 for using false ID cards for the purpose of renting mailboxes, rather than staying execution of the sentences on counts 6 and 7 under section 654.

V

STAYING SENTENCING ONLY ON COUNT 7

Citing *People v. Spirlin* (2000) 81 Cal.App.4th 119 (*Spirlin*), defendant contends his sentence on count 7 must be stayed under section 654 because counts 6 and 7 (using

14

false ID cards to rent mailboxes) involved indivisible acts or transactions with the same objectives of renting a mailbox for the purpose of purchasing merchandise using counterfeit money orders.

In count 6, defendant was convicted of presenting to the mailbox rental company, Postal Annex, a false California ID card and VA ID card on February 27, 2010. The ID cards were in the name of Daryl Wilson. In count 7, defendant was convicted of presenting to the mailbox rental company, Mail Plus and More, on June 4, 2010, the same false California ID card and VA ID card used on February 27, 2010. Defendant argues there was no evidence that he did not remain in constructive possession of the ID cards throughout the entire time he entered into both mailbox rental transactions (from June through June 2010), and therefore he could be sentenced only once for possessing the false ID cards.

We conclude the evidence was sufficient to support findings that counts 6 and 7 involved divisible acts or transactions with separate objectives, and therefore the trial court appropriately sentenced defendant separately for each count. Counts 6 and 7 involve two completely separate incidents, occurring over four months apart, at different mailbox companies. Therefore, even though defendant used the same ID cards to rent both mailboxes in furtherance of his scheme of purchasing mail-order merchandise with counterfeit money orders, defendant committed separate acts of renting two different mailboxes from different companies on separate occasions. Therefore counts 6 and 7 could reasonably be found to involve independent violations subject to imposition of separate sentencing.

15

Defendant's reliance on *Spirlin, supra,* 81 Cal.App.4th 119 is misplaced. The defendant in *Spirlin* was convicted of two robberies while personally armed, and three counts of being a felon in possession of a handgun. The three handgun possession counts were derived from defendant's possession of the same gun during two robberies and when he was arrested. Defendant was sentenced separately for each of the three gun possession counts. The court in *Spirlin* held that sentencing on two of the counts must be stayed under section 654, because defendant's possession of the handgun was a single act with a single objective, and defendant had continuous, constructive possession of the gun from a couple of months before the robberies until the defendant's arrest, when the gun was found in his apartment.

*Spirlin* is distinguishable because, unlike counts 6 and 7, the gun possession offense (§ 12021) in *Spirlin* did not require any specific criminal intent. Also a section 12021 gun possession crime may be committed by either actual or constructive possession as long as possession is intentional. (*Spirlin, supra,* 81 Cal.App.4th at p. 130.) In *Spirlin* the court concluded there was sufficient evidence of constructive possession to establish defendant was in continuous possession of the gun. Therefore the defendant's intent to possess the gun did not change each time he committed a robbery or when he was arrested. (*Id.* at p. 131.) The court thus held defendant's possession of the gun was a single act with a single objective and the trial court to stay imposition of sentence on two of the gun possession counts.

Here, possession of the false ID cards was not all that was required for defendant's count 6 and 7 convictions. Unlike in *Spirlin*, counts 6 and 7 are specific intent crimes,

16

which require specific intent to facilitate a forgery and defraud another person.  Although there was evidence defendant used the same false ID cards in counts 6 and 7, there was also evidence that he rented different mailboxes in counts 6 and 7, at different locations, from different companies, on different dates, and each mailbox was used for different, separate transactions, involving different clients.  This evidence established that counts 6 and 7 involved divisible acts and transactions with separate objectives, and therefore the trial court was not required to stay sentencing on count 7 under section 654.

VI

PRIOR STRIKE ALLEGATION

Defendant contends there was insufficient evidence to support the jury's true finding that he had a prior strike conviction for robbery.  Defendant argues that the prosecution did not submit any copies of Los Angeles Superior Court records of the prior conviction.

Normally, proving the fact and nature of a prior conviction is done by introducing "certified documents from the record of the prior court proceeding and commitment to prison, including the abstract of judgment describing the prior offense." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1066.)  "'[The] trier of fact is entitled to draw reasonable inferences from certified records offered to prove a defendant suffered a prior conviction. . . .' [Citations.]  '[O]fficial government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold standards of admissibility.  (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)  Some evidence must rebut

17

this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question.' [Citation.]" (*Ibid.*) "[I]f the prosecutor presents, by such records, prima facie evidence of a prior conviction that satisfies the elements of the recidivist enhancement at issue, and if there is no contrary evidence, the fact finder, utilizing the official duty presumption, may determine that a qualifying conviction occurred. [Citations.]" (*Ibid.*)

"On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*People v. Delgado, supra,* 43 Cal.4th at p. 1067.)

The jury in the instant case found true the allegation that defendant was convicted of robbery on August 6, 1987, in case No. A098955, in Los Angeles County. The People introduced exhibit 79 to prove the prior strike allegation. Exhibit 79 included the preliminary hearing transcript and documents prepared by a probation officer, including a probation officer report stating defendant was convicted of robbery, for which he was granted probation on February 2, 1990. Included with the report was an order dated December 22, 1994, revoking probation. Defendant complains that the probation report order is not file stamped and does not constitute part of the record of the prior conviction. But the report includes an order signed by the judge, revoking probation. Therefore the documents were properly considered by the court in support of the prior conviction allegation.

18

The prosecution also submitted a supplemental probation report filed on October 30, 1995. Defendant argues the report does not mention a conviction for robbery occurring in 1987. Defendant complains a third document, which is another probation officer's report, is dated "read and approved" on December 11, 1990 by the probation officer and counsel, and states defendant was convicted of a robbery, but the document is not file stamped. The document is stamped, "COURT COPY," is signed by the judge, and is dated December 15, 1989. Another probation report stamped "court copy" and dated October 22, 1990, states that defendant was convicted of robbery, he was granted probation in February 1990, and the probation officer recommended revoking probation because defendant was arrested and charged with burglary in September 1990. Another probation report stamped "COURT COPY," stated defendant pled guilty and was convicted of robbery on August 6, 1987. Federal charges were dismissed. Defendant asserts the report should not be considered because it is not file stamped, is not dated, and a judge did not sign the report, confirming the judge read and considered it.

Defendant argues none of the probation reports could be considered part of the record of defendant's prior robbery conviction because they are not file stamped, with the exception of one report, which was filed eight years after the prior conviction and the report makes no mention of the robbery conviction. Nevertheless, we conclude the documents the prosecution relied upon in proving defendant's prior robbery conviction contain reliable certified probation reports and court documents from which the jury could reasonably find that defendant suffered the alleged prior robbery conviction. The documents were certified as official records of the Los Angeles County Superior Court

19

and therefore provided sufficient evidence to support the trial court's finding the prior strike allegation was true. (Evid. Code, §§ 664, 1280.)

VII

GOOD CONDUCT CREDITS UNDER SECTION 4019

Defendant contends the trial court miscalculated his presentence good conduct credits under the amended version of section 4019, effective October 1, 2011. He argues that his constitutional equal protection rights were violated by the trial court not applying the amended version retrospectively. We disagree.

Defendant committed the charged crimes in February, March, June, September, and October 2010. He was sentenced on November 8, 2011. Defendant was in custody because of a parole violation from June 9, 2010, through September 7, 2010 (91 days). He returned to custody on December 28, 2010, and remained in custody through the date of sentencing on November 8, 2011 (316 days). At the sentencing hearing, the trial court awarded defendant 407 days of actual custody credit. Because defendant had a strike, he received only 202 days of good conduct credit under the 1982 version of section 4019, for a total of 609 days of credit.

Operative October 1, 2011, the Legislature amended section 4019 to allow all defendants serving presentence time in county jail to be eligible for day for day credit. (Stats. 2011, ch. 15, § 482, eff. Apr. 4, 2011, Stats. 2011, ch. 39, § 53, and Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 35.) Section 4019 now provides that "a term of four days will be deemed to have been served for every two days spent in actual custody." (§ 4019, subd. (f).) The only defendants who are excluded from section 4019's current

20

day for day credit provisions are those who have a current violent felony or murder conviction. (See §§ 2933.1, subd. (c), 2933.2, subd. (c).) By its express terms, the amendment to section 4019 applies only to defendants whose crimes were committed on or after October 1, 2011. (§ 4019, subd. (h).) Additionally, subdivision (h) expressly provides that this change "shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).)

Defendant argues that, despite the express terms of section 4019, he is entitled to additional presentence conduct credit on the ground that the equal protection clause required that the recently amended section 4019 be applied to him retroactively. Based on our Supreme Court's recent decisions in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) and *People v. Lara* (2012) 54 Cal.4th 896 (*Lara*), we conclude that equal protection principles do not require retroactive application of the October 1, 2011, amendment to section 4019.

In *Lara*, the Supreme Court explained it rejected the defendant's equal protection argument because, as stated in *Brown, supra,* 54 Cal.4th at pages 328-330, "'"[t]he obvious purpose"'" of a law increasing conduct credits "'is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison." [Citation.] "[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application."'" (*Brown,* at p. 329, quoting *In re Strick* (1983) 148 Cal.App.3d 906, 913.)

21

Accordingly, prisoners who serve their pretrial detention before such a law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose. (*Brown,* at pp. 328-329.)" (*Lara, supra,* 54 Cal.4th at p. 906, fn. 9; see also *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551 [appellate court held that the *Brown* court's reasoning and conclusion applied equally to the Oct. 1, 2011, amendment to § 4019, and that amendment did not apply retroactively].)

Defendant's reliance on *In re Kapperman* (1974) 11 Cal.3d 542 for the proposition section 4019 must be applied retroactively to defendant, is also misplaced and resolved by well settled law. As explained in *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552: "*Brown* rejected the notion the case before it was controlled by *In re Kapperman* (1974) 11 Cal.3d 542 . . . , in which the court held equal protection required retroactive application of a statute granting credit to felons for time served in local custody before sentencing and commitment to state prison, despite the fact the statute was expressly prospective. (*Brown, supra,* 54 Cal.4th at p. 330.) *Brown* found *Kapperman* distinguishable: 'Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated.' (*Brown, supra,* at p. 330.)"

We agree with the reasoning and conclusions of *Brown*, *Lara*, and *Ellis* and, therefore, we reject defendant's argument that he was entitled to additional good conduct credits.

22

## VIII

## CORRECTION OF ABSTRACT OF JUDGMENT

Defendant requests this court to order the abstract of judgment and sentencing minute order dated November 8, 2011, corrected to show that the jury only found one prison prior allegation true. The People agree with the request.

The jury found that defendant had four prior convictions. The jury also found one prior prison term. The sentencing minute order dated November 8, 2011, incorrectly states that there were four prison priors, for which the trial court imposed a one-year prison term for each of the prison priors, totaling four years, with three years stayed. The abstract of judgment incorporates the incorrect information stated in the November 10, 2011 minute order; that defendant suffered four prison priors, rather than only one. As the parties acknowledge, the November 8, 2011, minute order and the abstract of judgment filed on November 10, 2011, must be amended to show that defendant sustained only one prison prior. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 [oral pronouncement of sentence controls over conflicting minute order].)

## IX

## DISPOSITION

The matter is remanded to the trial court with directions to amend the November 8, 2011, minute order to show that the jury found only one prison prior allegation true and the trial court imposed sentencing on only one prison prior. The trial court is

23

further instructed to forward a corrected abstract of judgment to the Department of

Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


KING

Acting P. J.


MILLER

J.