Filed 5/13/22  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076296 |
| v. | (Super.Ct.No. INF1901371) |
| RAUL VEGA HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina, Paige B. Hazard, and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Raul Vega Hernandez appeals from the trial court's imposition of consecutive sentences for unlawfully causing a fire of forest land (Pen. Code, § 452, subd. (c); unlabeled statutory references are to this code) and unlawful possession of an incendiary device (§ 453, subd. (a)). Hernandez argues that the offenses comprise a single indivisible course of criminal conduct for which he cannot be subject to multiple punishments pursuant to section 654, subdivision (a). He also argues, and the People concede, that section 1465.9, subdivision (a), which became effective July 1, 2021, mandates that the portion of the trial court's order imposing a presentence probation report fee be vacated. Finding both arguments have merit, we reverse in part and remand for resentencing.

BACKGROUND

On the morning of August 1, 2019, law enforcement officers participating in a multi-agency task force were travelling on Interstate 10 in Palm Desert when they spotted smoke rising from a row of tamarisk trees lining railroad tracks south of the freeway. The officers stopped to investigate and saw four trees, approximately 20 yards apart, burning. The four fires appeared to have started recently and were successively smaller as they ran from east to west, giving the appearance that the furthest west tree had ignited most recently. As they assessed the situation, two of the officers saw a man, later identified as Hernandez, emerge from the trees west of the fires, stop, look around, make eye contact with the officers, and then run back into the tree line south of the tracks. The two officers pursued but lost sight of the suspect within a few minutes. The officers

2

called for assistance from Riverside County Sheriff's deputies, providing a description of the suspect. Approximately 40 minutes later, Hernandez was detained nearby. He was carrying a backpack that contained, among other things, a partially full box of fireplace matches eight to 10 inches long and an eyeglasses case containing a glass methamphetamine pipe, a lighter, a small butane torch, and two grams of methamphetamine in a plastic bag.

Hernandez testified at trial that he had gone early that morning to a country club where he had previously worked as a groundskeeper to go "Dumpster diving," searching for valuable or useful items discarded in residents' trash. Hernandez arrived around 8:00 a.m., jumped over a wall into the country club, and spent about two hours going through 50-60 trash cans scavenging for various items, which he placed in his backpack. He also took the matches and a valve for a propane tank from a resident's back yard. By about 10:00 a.m., it had become very hot out, and Hernandez was ready to go home. After jumping back over the wall to exit the country club, Hernandez noticed police and emergency vehicles in the area. Seeking to avoid police because he had drugs in his pocket, Hernandez cut through a gated community, where he was arrested.

Meanwhile, firefighting units had arrived at the scene shortly after 10:00 a.m. and began fire suppression efforts on two rapidly spreading fires about 75 yards apart. Given the absence of wind that morning, the two columns of smoke rising straight up, and the unburnt vegetation between the two fires, it was clear that the two fires had independent points of ignition rather than originating as a single fire that had jumped from one burn

3

area to the other. All of the fire captains investigating the fires' origin agreed they had been started by a human cause, likely using an open flame device, and one captain described them as an arson "spree" in which a person lit multiple fires within a short duration.

Hernandez was charged with one felony count of arson to forest land in violation of Penal Code section 451, subdivision (c) (count 1); one felony count of possession of an incendiary device with intent to use it to set fire to or burn any structure, forest land, or property in violation of Penal Code section 453, subdivision (a) (count 2); one misdemeanor count of possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a) (count 3); and one misdemeanor count of possession of drug paraphernalia in violation of Health and Safety Code section 11364, subdivision (a) (count 4). The information also alleged a five-year prior serious felony enhancement pursuant to subdivision (a) of Penal Code section 667 and a prior strike conviction pursuant to subdivisions (c) and (e)(1) of Penal Code section 667 and subdivision (c)(1) of Penal Code section 1170.12.

A jury convicted Hernandez on all counts except count 1, on which the jury convicted him of the lesser included offense of recklessly causing a fire on forest land in violation of section 452, subdivision (c). Hernandez was sentenced on December 11, 2020, to five years and four months in state prison, which consisted of two years (the middle term) on count 1, a consecutive eight months (one-third of the middle term) on count 2, with both sentences doubled for the prior strike conviction, and concurrent

4

sentences of 364 days on count 3 and 180 days on count 4.  The court also imposed various fines and fees, including a presentence probation report fee not to exceed $1,095 pursuant to former section 1203.1b.

DISCUSSION

A. *Standard of Review*

Former section 654, in effect at the time of Hernandez's sentencing, provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Former § 654, subd. (a).)  The statute thus "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.)  Its purpose is to ensure that a defendant's punishment will be commensurate with his or her criminal culpability.  (*People v. Kramer* (2002) 29 Cal.4th 720, 723).

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective.  [Citations.]  We first consider if the different crimes were completed by a 'single physical act.'  [Citation.]  If so, the defendant may not be punished more than once for that act.  Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of

5

conduct reflects a single "'intent and objective'" or multiple intents and objectives. [Citations.]" (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312 (*Corpening*).) "'""If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'""' [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 354 (*Jackson*).)

"Whether multiple convictions are based upon a single act is determined by examining the facts of the case." (*People v. Mesa* (2012) 54 Cal.4th 191, 196.) Intent and objective are also "factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*Jackson*, *supra*, 1 Cal.5th at p. 354.) A trial court's imposition of multiple sentences must be sustained on appeal so long as its factual findings, express or implied, of multiple acts or multiple intents and objectives are supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731; *People v. Cruz* (2020) 46 Cal.App.5th 715, 737.) Accordingly, we review the trial court's imposition of multiple sentences "'in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.'" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.)

B. *Section 654 Prohibits Imposition of Multiple Sentences for Counts 1 and 2*

Hernandez argues that he cannot be punished for both count 1 and count 2 because he "possessed matches and set fires with a single objective." We agree that the record contains no evidence supporting the trial court's implied finding of multiple intents or

6

objectives.  The only evidence of Hernandez's unlawful intent to set fire to or burn forest land, which is the intent element for count 2 (§ 453, subd. (a)), was the fires that he actually caused, for which he was sentenced on count 1.  There was no evidence that he possessed the matches with unlawful intent to set some other, uncharged fire, so there was no evidence of multiple intents.  (See *People v. Shiga* (2019) 34 Cal.App.5th 466, 470 [section 654 applied to sentences for possession of flammable materials and aggravated arson where defendant used the flammable materials to commit the arson].)

The People argue that section 654 does not apply because the two crimes had distinct, independent objectives.  The count 2 possessory offense was complete when Hernandez "grabbed the matches from a resident's backyard and put them in his backpack," at which point he "possessed the matches and maliciously intended to use them to set fire."  The count 1 arson offense took place later, after Hernandez had left the country club.  "Appellant thus harbored two different objectives when he committed these two separate offenses:  during the first offense, the abstract objective to use the matches to start a fire at some future time, and during the second offense, the pointed objective to set fire to the tamarisk trees, specifically."

The argument lacks merit because it assumes that when Hernandez took the box of matches, he harbored an unlawful intent to use them to start a fire.  But the record contains no evidence of any intent to set fire to or burn anything apart from the fires Hernandez actually caused, for which he was sentenced on count 1.  The argument thus fails to identify any evidence that would support an implied finding of independent

7

intents.  A trial court's implicit finding of separate criminal objectives and intents must be supported by substantial evidence.  "'"By definition, 'substantial evidence' requires *evidence* and not mere speculation.  In any given case, one 'may *speculate* about any number of scenarios that may have occurred . . . .  A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work . . . .'"'" (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851.)

The People make a related argument that fails for the same reason.  The People argue that after taking the matches but before setting the fire, Hernandez had time to reflect and renew his criminal intent, so each act can be separately punished.  Multiple punishments are permitted under section 654 "'"where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one.'" (*People v. Roles* (2020) 44 Cal.App.5th 935, 947; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253 ["If the offenses were committed on different occasions, they may be punished separately."].)  But the argument again fails to identify any evidence that when Hernandez took the matches he harbored the required unlawful intent to use them to set a fire.  That is, without the fires that Hernandez in fact caused, there would be no evidence that at any point he harbored an unlawful intent to set fire to or burn anything.  It follows that there is no evidence of an unlawful intent to willfully and maliciously use the matches to set a fire that is independent of the fires he actually caused.

8

The People also argue that because the evidence showed Hernandez ignited four different trees, each separated by 20 yards, he "made a series of conscious decisions to continue after the first, second, and third fires, walking down the tree line, pulling matches, and setting new fires until he was spotted by police." The People conclude that Hernandez's course of conduct "was thus divisible in time, as well as in intent," thus allowing for multiple punishments. The argument might be persuasive had Hernandez been convicted and sentenced on multiple counts of causing fires. But he was not. Rather, he was convicted of a single count of unlawfully burning forest land and a single count of possession of an incendiary device, which requires the intent to willfully and maliciously use the device to set fire to or burn any structure, forest land, or property. Again, the People's argument fails because it does not identify any evidence, other than the fires Hernandez actually caused, that he ever had an unlawful intent to use the matches to set fire to or burn any structure, forest land, or property.

Finally, the People argue that section 654 does not bar multiple punishments because Hernandez's "decision to set four separate fires stretched far beyond what was reasonably necessary to accomplish" his criminal objective, and each subsequent fire created a new, additional risk of harm. The cases cited by the People have found section 654 inapplicable to multiple crimes that included "gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense" (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191), or where each subsequent crime for which the defendant was sentenced created a new risk of harm to the victim (*People v.*

9

*Trotter* (1992) 7 Cal.App.4th 363, 366-368).  Here again, the flaw in the People's argument is that Hernandez was not charged with multiple counts for successively setting fire to multiple trees.  (See *Corpening*, *supra*, 2 Cal.5th at pp. 315-316 [in determining whether section 654 bars multiple punishments for both a carjacking and a robbery completed by a single forceful taking, it is irrelevant "that other criminal acts may have been committed in the course of this forceful taking"].)  Rather, the multiple punishments Hernandez challenges are for possession with intent to use an incendiary device and recklessly causing a fire to forest land.  Section 654 bars multiple punishments where, as here, "each crime furthered the same objective," and one crime is simply "'a means toward the objective of the commission of the other.'"  (*People v. Britt* (2004) 32 Cal.4th 944, 952-953.)

For all of the foregoing reasons, we agree with Hernandez that the trial court erred by imposing separate punishments for counts 1 and 2, because the record contains no evidence that he harbored separate and independent intents for those two counts.

C.  *Amended Section 654 Applies Retroactively to Hernandez's Sentences*

When Hernandez was sentenced, former section 654 provided that an act punishable under more than one provision "shall be punished under the provision that provides for the longest potential term of imprisonment" but could not be punished under more than one provision.  Consequently, our usual remedy for erroneous multiple punishment was "'"to modify the sentence to stay imposition of the lesser term."'"  (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 131 (*Spirlin*).)

10

While this appeal was pending, however, Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441) (Assembly Bill 518) was enacted, effective January 1, 2022, amending section 654 to provide that a defendant whose single act is punishable by multiple provisions of law "may be punished under either of such provisions." (Stats. 2021, ch. 441, § 1.) Hernandez argued in his reply brief that this amendment should apply retroactively to his nonfinal judgment under *In re Estrada* (1965) 63 Cal.2d 740, and he requested that we remand to allow the trial court to exercise its sentencing discretion under the amended section 654. We requested supplemental briefing on the issue, and the parties agree that Assembly Bill 518 applies retroactively to all cases not final on appeal.

We agree with the parties and the courts that have held Assembly Bill 518 applies retroactively to all nonfinal judgments. (See *People v. Mendoza* (2022) 74 Cal.App.5th 843, 862, fn. 14; *People v. Sek* (2022) 74 Cal.App.5th 657, 673; *People v. Mani* (2022) 74 Cal.App.5th 343, 379-381 (*Mani*).) We also agree with the People that Assembly Bill 518's amendment of section 654 will not affect the length of Hernandez's sentence, because the sentencing triads are the same for counts 1 and 2. (§ 452, subd. (c) (count 1); § 453, subd. (a) & § 1170, subd. (h)(1) (count 2).)

The People argue that if we do remand for resentencing, a full resentencing is required to allow the trial court to reevaluate all of its sentencing decisions in light of changed circumstances. The People do not, however, cite any authority for application of the "full resentencing rule" (*People v. Buycks* (2018) 5 Cal.5th 857, 893) to correct a

section 654 error. As previously mentioned, the usual remedy under former section 654 was for the reviewing court to exercise its power to modify the judgment under section 1260 to stay execution of the duplicative sentence pursuant to section 654. (See *Spirlin*, *supra*, 81 Cal.App.4th at p. 131; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473.) In light of the amendment to section 654, we follow the procedure set forth in *Mani*, *supra*, 74 Cal.App.5th at p. 381, directing the trial court to apply section 654 to counts 1 and 2, and allowing it to exercise its discretion under Assembly Bill 518 to choose on which of those counts it will stay execution of sentence.

D. *The Probation Report Fee Must be Vacated*

At sentencing on December 11, 2020, Hernandez was ordered to pay a probation report fee not to exceed $1,095 pursuant to former section 1203.1b. Hernandez argues, the People concede, and we agree that we must vacate the portion of the judgment imposing the probation report fee. Assembly Bill No. 1869 (2019-2020 Reg. Sess.) "added Penal Code section 1465.9 and Government Code section 6111, which provide that on and after July 1, 2021, the unpaid balance of such fees imposed by the court 'shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated.' (Pen. Code, § 1465.9, subd. (a); see Gov. Code, § 6111, subd. (a).)" (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 215; see *People v. Greeley* (2021) 70 Cal.App.5th 609, 625-627; *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 952-954; *People v. Clark* (2021) 67 Cal.App.5th 248, 259-260.)

DISPOSITION

Any unpaid portion of the presentence investigation and report fee imposed pursuant to former section 1203.1b is vacated.  The matter is remanded to the trial court with directions to stay execution of sentence as to either count 1 or count 2 pursuant to section 654 as amended by Assembly Bill 518.  Following resentencing, the court is to prepare an amended abstract of judgment and forward certified copies to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:


McKINSTER
Acting P. J.


RAPHAEL
J.

13